IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **TIMOTHY WILLIAMS, ERIK MCLEROY, ANDREW ATTAWAY, and JUSTIN COTA,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**PRIME ENERGY SERVICES, INC. and ROBERT JOSEPH SHAW,**<br><br>**Defendants.** | Civil Action No. _____ |

# **COMPLAINT**

Plaintiffs Timothy Williams, Erik McLeroy, Andrew Attaway, and Justin Cota, assert claims against Defendants Prime Energy Services, Inc. and Robert Joseph Shaw for due but unpaid minimum wages and due but unpaid overtime wages, as well as bad faith breach of contract and quantum meruit, as follows:

**1. INTRODUCTION**

1.

In this Fair Labor Standards Act action, 29 U.S.C. § 201 *et seq.*, Plaintiffs seek to recover unpaid minimum and overtime wages from their former employers, Defendants Prime Energy Services, Inc. and Robert Joseph Shaw. They

-1-

additionally bring state law claims for breach of contract and quantum meruit related to unpaid wages in excess of the federal minimum wage.

## 2. JURISDICTION AND VENUE

2.

The jurisdiction of this Court is proper pursuant to Article III, § 2 of the United States Constitution, 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, as this case arises under the FLSA, a federal statute which affects interstate commerce.

3.

Prime Energy Services, Inc. (hereinafter "Prime") is a domestic corporation existing under the laws of the State of Georgia.

4.

Prime may be served with process via service on its registered agent for service, Laura Shaw, at 3349 Rosecliff Trace, Buford, Georgia 30519.

5.

This Court has personal jurisdiction over Prime.

6.

Defendant Robert Joseph Shaw (hereinafter "Shaw") is a natural person.

7.

Shaw may be served with process at his residence in Gwinnett County, Georgia, or wherever he may be found.

8.

This Court has personal jurisdiction over Shaw.

9.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Defendants regularly conduct business in this judicial district, a substantial portion of the events giving rise to the claims herein arose in this judicial district, and both Defendants reside in this judicial district.

### 3. EMPLOYMENT RELATIONSHIP

10.

Plaintiff Timothy M. Williams worked as a commercial lighting technician for Prime from approximately early October 2016 through January 16, 2017.

11.

Plaintiff Andrew J. Attaway worked as a commercial lighting technician for Prime from approximately early October 2016 through January 16, 2017.

12.

Plaintiff Erik I. McLeroy worked as a commercial lighting technician for Prime from approximately early November 15, 2016 through January 25, 2017.

13.

Plaintiff Justin C. Cota worked as a commercial lighting technician for Prime from approximately early December 17, 2016 through January 25, 2017.

14.

In their positions as commercial lighting technicians working for Prime, Plaintiffs were responsible for installing electric systems in the non-residential buildings of Prime's customers.

15.

At all times material hereto, Plaintiffs were "employees" of Prime as defined in FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

16.

At all times material hereto, Plaintiffs worked from blueprints and/or diagrams provided by Prime.

17.

At all times material hereto, Plaintiffs worked exclusively on projects commissioned by customers of Prime.

18.

At all times material hereto, Plaintiffs provided only their own hand tools, and substantially all electric tools, heavy equipment, and supplies used in their work as commercial electrical technicians was provided by Prime.

19.

At all times material hereto, each Plaintiffs' hand tools had a value of less than $1,500.

20.

At all times material hereto, Plaintiffs' days and hours of work were determined by Prime.

21.

At all times material hereto, the manner in which Plaintiffs performed their work was determined by Prime.

22.

At all times material hereto, Prime obtained all customers and projects on which Plaintiffs performed work as commercial lighting technicians.

23.

At all times material hereto, Plaintiffs' work for Prime as commercial lighting technicians required no formal training , special skills, or licenses other than those acquired on the job.

24.

At all times material hereto, Plaintiffs and Defendants contemplated that Plaintiffs' work for Prime would be long-term in nature.

25.

At all times material hereto, the performance of Plaintiffs' work as commercial lighting technicians was integral to the business purpose of Prime.

26.

At all times material hereto, Prime agreed to pay Plaintiffs $25 per diem when travelling in connection with their work for Prime.

27.

At all times material hereto, Prime agreed to reimburse Plaintiffs for the cost of their hotels when travelling in connection with their work for Prime.

28.

At all times material hereto, Prime agreed to reimburse Plaintiffs for mileage and use of their personal vehicles when travelling in connection with their work for Prime.

29.

At all times material hereto, Prime agreed to reimburse Plaintiffs on a combined piece rate and hourly rate basis.

**4. INDIVIDUAL COVERAGE UNDER THE FLSA**

30.

During the Relevant Time Period, Plaintiffs traveled from state to state to complete the work assigned to them by Prime.

31.

During the Relevant Time Period, Plaintiffs were individually engaged in commerce as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

## 5. ENTERPRISE COVERAGE UNDER THE FLSA

32.

During the Relevant Time Period, employees of Prime used the following goods or materials that moved through commerce for its business purpose: computers, cell phones, electrical tools, electrical supplies, gasoline, and vehicles.

33.

During 2016, Prime had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

34.

During 2016, Prime had two or more "employees" engaged in the "production of goods for commerce" as defined in 29 U.S.C. § 203(s)(1)(A).

35.

During 2016, Prime had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

36.

During 2016, Prime had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

37.

During 2016, Prime was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 3(s)(1), 29 U.S.C. § 203(s)(1).

38.

During 2017, Prime had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

39.

During 2017, Prime had two or more "employees" engaged in the "production of goods for commerce" as defined in 29 U.S.C. § 203(s)(1)(A).

40.

During 2017, Prime had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

41.

During 2017, Prime will have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

42.

During the last three quarters of 2016 through the first quarter of 2017, Prime had have an annual gross volume of sales made or business done of not less than

$500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

43.

During 2017, Prime was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 3(s)(1), 29 U.S.C. § 203(s)(1).

44.

At all times material hereto, Prime was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

### 6. INDIVIDUAL EMPLOYER UNDER THE FLSA

45.

At all times material hereto, Defendant Shaw was Plaintiff's "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

46.

At all times material hereto, Shaw was involved in the day-to-day operation of Prime's business.

47.

At all times material hereto, Shaw had supervisory authority over Plaintiffs.

48.

At all times material hereto, Shaw had the authority to hire and fire Plaintiffs.

49.

At all times material hereto, Shaw had authority over the terms of Plaintiffs' compensation.

50.

At all times material hereto, Shaw was an owner of Prime.

51.

At all times material hereto, Shaw was a corporate officer of Prime.

52.

At all times material hereto, Shaw was the Chief Executive Officer of Prime.

**7.   NON-EXEMPT EMPLOYEES UNDER THE FLSA**

53.

At all times material hereto, Plaintiffs were not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

54.

At all times material hereto, Plaintiffs were not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

55.

At all times material hereto, Prime did not employ Plaintiffs in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

56.

At all times material hereto, Prime did not employ Plaintiffs in a bona fide administrative capacity within the meaning of 29 USC § 213(a).

57.

At all times material hereto, Prime did not employ Plaintiffs in a bona fide executive capacity within the meaning of 29 USC § 213(a).

58.

At all times material hereto, Prime did not employ Plaintiffs on a salary basis of at least $455 per week.

## COUNT I
## FAILURE TO PAY MINIMUM WAGE PURSUANT TO 29 U.S.C. § 206 ON BEHALF OF ALL PLAINTIFFS AGAINST BOTH DEFENDANTS

59.

The allegations in paragraphs 1 through 58 are incorporated by reference as if fully set out in this paragraph.

60.

At all relevant times, Plaintiffs were employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

61.

Plaintiffs each worked for Defendants during the workweek ending on January 13, 2017.

62.

Plaintiffs each worked for Defendants during the workweek ending on January 20, 2017.

63.

Plaintiffs McLeroy and Cota worked for Defendants during the workweek ending on January 27, 2017.

64.

Defendants refused issue paychecks to Plaintiffs for work performed in any of the workweeks ending on January 13th, 20th, and 27th 2017.

65.

Defendants' refusal to compensate Plaintiffs in those workweeks caused Plaintiffs to be compensated for the work performed in those workweeks at an hourly rate lower than the minimum wage as established in accordance with the FLSA, to wit, $7.25 per hour.

66.

Plaintiffs are entitled to payment of all unpaid minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

67.

As a result of the underpayment of minimum wages as alleged above, Plaintiffs are entitled to liquidated damages in an amount equal to their unpaid minimum wages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

68.

As a result of the underpayment of minimum wages as alleged above, Defendants are liable to Plaintiffs for their litigation costs, including their reasonable attorney's fees, in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

### COUNT II
### FAILURE TO PAY OVERTIME WAGES PURSUANT TO 29 U.S.C. § 207 AS TO ALL PLAINTIFF AGAINST BOTH DEFENDANTS

69.

The allegations in paragraphs 1 through 58 are incorporated by reference as if fully set out in this paragraph.

70.

At all relevant times, Plaintiffs were employees covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

71.

Plaintiffs each worked for Defendants in excess of forty (40) hours per week during numerous workweeks.

72.

The *minimum* number of workweeks in which Plaintiffs worked in excess of forty (40) hours per week are shown in the following chart.

| Week Ending | Williams | McLeroy | Attaway | Cota |
|---|---|---|---|---|
| 10/25/16 | | | | |
| 11/4/16 | x | | x | |
| 11/11/16 | x | | x | |
| 11/18/16 | x | | x | |
| 11/25/16 | | x | | |
| 12/2/16 | x | x | x | |
| 12/9/16 | x | x | x | |
| 12/16/16 | | | | |
| 12/23/16 | x | | | |
| 12/30/16 | x | x | x | x |
| 1/6/17 | | | | |
| 1/13/17 | | | | |
| 1/20/17 | | | | |
| 1/27/17 | | x | | x |

73.

Defendants failed to pay Plaintiffs at one-and-one-half times their regular rate of pay for work in excess of forty (40) hours in each and every relevant workweek.

74.

Plaintiffs are entitled to payment of overtime wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

75.

Plaintiffs are entitled to liquidated damages in an amount equal to their unpaid overtime wages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

76.

Plaintiffs are entitled to their litigation costs, including their reasonable attorney's fees, in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

### COUNT III
### FAILURE TO PAY CONTRACTUAL WAGES AS TO ALL PLAINTIFFS AGAINST DEFENDANT PRIME ONLY

77.

The allegations in paragraphs 1 through 58 are incorporated by reference as if fully set out in this paragraph.

78.

Prime and Plaintiffs entered into an oral agreement that Plaintiffs would perform services for Prime on a mixed piece-rate and hourly basis, plus reimbursements for out-of-pocket expenses.

79.

Prime and Plaintiffs' agreement constituted a binding contract.

80.

Prime refused to pay Plaintiffs for work performed in the pay periods ending on January 13, 2017.

81.

Prime refused to pay Plaintiffs for work performed in the pay periods ending on January 20, 2017.

82.

Prime refused to pay Plaintiffs for work performed in the pay periods ending on January 27, 2017.

83.

Prime's failure to pay Plaintiffs for work performed during those pay periods constitutes a breach of the Parties' agreements.

84.

Plaintiffs have been harmed by Prime's breach and failure to pay their wages and reimbursements in an amount to be determined at trial.

85.

Prime intentionally and willfully breached its agreements with Plaintiffs to pay them wages and reimbursements.

86.

Prime has been stubbornly litigious and has caused Plaintiffs unnecessary trouble and expenses in connection with this matter.

87.

Because of Prime's bad faith, Plaintiffs are entitled to recover their reasonable attorney's fees and costs of litigation from Prime pursuant to O.C.G.A. § 13-6-11.

## COUNT IV
## QUANTUM MERUIT AGAINST DEFENDANT PRIME ONLY

88.

The allegations in paragraphs 1 through 58 are incorporated by reference as if fully set out in this paragraph.

89.

Plaintiffs' performance of work in the workweeks ending on January 13, 20, and 27, 2017, was valuable to Prime.

90.

Plaintiffs' performance of work in the workweeks ending on January 13, 20, and 27, 2017, was at the request of and knowingly accepted by Prime.

91.

Plaintiffs performed work for Prime in the workweeks ending on January 13, 20, and 27, 2017, with the expectation that they would be compensated by Prime at the agreed-upon rate, plus reimbursement and mileage.

92.

It would be unjust not to require Prime to compensate Plaintiffs in accordance with their agreements.

93.

Plaintiffs are entitled to receive an amount equal to the value they conferred to Prime through their work in the workweeks ending on January 13, 20, and 27, 2017, in an amount to be determined at trial.

94.

Prime acted in bad faith in refusing to compensate Plaintiffs for the work they performed in the workweeks ending on January 13, 20, and 27, 2017.

95.

Prime has been stubbornly litigious and has caused Plaintiffs unnecessary trouble and expenses in connection with this matter.

Because of Prime's bad faith, Plaintiffs are entitled to recover their reasonable attorney's fees and costs of litigation from Prime pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiffs respectfully pray that the Court:

(a) Take jurisdiction of this matter;

(b) Grant a trial by jury as to all matters properly triable to a jury;

(c) Issue an Order holding each of the Defendants to be an "employer" as that term is defined under the FLSA;

(d) Issue a judgment declaring that Plaintiffs are employees covered by the FLSA, and that Defendants have failed to comply with the minimum wage and overtime requirements of the FLSA;

(e) Award Plaintiffs all due but unpaid minimum wages and liquidated damages equaling 100% of the minimum wages due Plaintiffs, as required by the FLSA;

(f) Award Plaintiffs payment for each overtime hour worked during the relevant time period, calculated at one-and-one-half times their regular hourly rate, and liquidated damages equaling 100% of the overtime wages due Plaintiffs, as required by the FLSA;

(g) Award Plaintiffs prejudgment interest on all amounts owed to the extent that liquidated damages are not awarded;

(h) Award Plaintiffs nominal damages;

(i) Award Plaintiffs their costs of litigation including reasonable attorney's fees pursuant to 29 U.S.C. § 216(b);

(j) Award Plaintiffs judgment against Defendant Prime for their contract claim herein asserted in an amount to be proved at trial;

(k) Award Plaintiffs judgment against Defendant Prime for their quantum meruit claim herein asserted in an amount to be proved at trial;

(l) Award Plaintiffs their costs of litigation and reasonable attorney's fees pursuant to O.C.G.A. § 13-6-11;

(m) Enter judgment for Plaintiffs in an amount reflecting the award of all damages and relief requested in this Complaint; and

(n) Award any and such other further relief this Court deems just, equitable and proper.

This 22nd day of May 2017.

Respectfully submitted,

                                                      **DELONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN, LLC**

| | |
|---|---|
| | */s/ Matthew W. Herrington* |
| 3100 Centennial Tower | Charles R. Bridgers |
| 101 Marietta Street | Ga. Bar No. 080791 |
| Atlanta, Georgia 30303 | Matthew W. Herrington |
| (404) 979-3171 | Ga. Bar No. 275411 |
| (404) 979-3170 (f) | |
| charlesbridgers@dcbflegal.com | **Counsel for Plaintiff** |
| matthew.herrington@dcbflegal.com | |